UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT E. HARRINGTON,

    *Plaintiff*,

v.

ANN ARBOR VA HOSPITAL,
and RONAN, Dr.,

    *Defendants*.
_____/

CASE NO. 10-CV-13788

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE CHARLES E. BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS
(Doc. 15)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion to dismiss be **GRANTED**.

### II.    REPORT

#### A.    Introduction

On September 23, 2010, Plaintiff Robert E. Harrington filed this *pro se* action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), claiming that the Dr. Ronan was negligent in performing cataract removal surgery on Plaintiff on February 27, 2007, resulting in Plaintiff experiencing "delaminating sensations" and "bubbles and floaters" in his vision. (Doc. 1 at 1; Doc. 17 at 3.) On October 5, 2010, United States District Judge Thomas L. Ludington referred all pretrial matters to the undersigned magistrate judge. (Doc. 5.) Defendants filed the instant motion to dismiss on March 18, 2011. (Doc. 15.) Plaintiff filed his response on March 24, 2011, and a supplemental response on March 28, 2011. (Doc. 17, 18.) Although the Court's

scheduling order allowed Defendant to file a reply on or before May 10, 2011, none was filed. (Doc. 16.) Upon review of the documents, I conclude that, pursuant to E.D. Mich. LR 7.1(f)(2), this motion is ready for Report and Recommendation without oral argument.

### B. Plaintiff's Complaint

Plaintiff's complaint avers that he has filed suit

regarding a 2/27/2007 right eye cataract removal surgery where-in a Senior Student was left unsupervised by his Professor Dr. Ronan who failed to show up . . . leaving only me and our Anesthesiologist to witness the accident wherein . . . the Anesthesiologist could offer no help when asked . . . but where I could at least hold my head totally motionless during the premature closure of the fiasco that went as follows . . . .

1) The student's scapula caused a one stitch "poke" to the back wall of the right eye's socket.

2) Resulting in "pigment related material rushing very forcefully up to the right eye's surface."

3) Causing "The Posterior Vitreous Detachment of the Right eye's Retina."

4) And also resulting in the premature closure of the then bloody surgery.

5) Leaving "very small dark particles" from the retinal materials . . .

6) Plus 2 very thin slices of cataract material . . .

7) And the resulting bubbles . . . all referred to collectively as "bubbles & floaters" . . . that they say one can become accustomed to in time.  But not by this Alzheimer's Patient who remains most distracted indeed.

8) Dr. Eric Young . . . the then Acting Director of the Ann Arbor VA . . . wrote in a 6/25/2008 letter to me, confirming the possibility of "a tear in the posterior capsule" having taken place. Going on to write that "5% of Posterior Vitreous Detachments cause a hole or tear" like this one. And when possible corrective eye surgery was mentioned he wrote that "no Retinal Surgeon would try to perform corrective Vitrectomy Surgery given the high risks" of such a corrective procedure . . . an Opinion agreed to by a 2nd opinion I got on my own.

2

9) And 2nd opinions all agreed that it is almost impossible to detect a retinal detachment . . . as the very purpose of the surrounding material of that eye is to protect the retina by keeping it safely tucked away.

10) But I have already experienced numerous occasions when I experience a very brief delaminating sensation that resembles the various stages of an eclipse of the Sun. Or . . . as others would describe it . . . resembling a lifting window's shade. And on one occasion I actually cupped my hands in readiness to catch the thing when separation reached about 60%, and at risk of falling out altogether.

11) This all resulting in the Saginaw VA's prescription of Transition Dark Glasses for just such an occasion.

12) In the meantime . . . however . . . the Ann Arbor VA . . . the Detroit VA Legal Department . . . plus the Washington DC VA Legal Offices . . . all claimed "no foul - no blame." Thus awaiting the real chance of my going 100% blind in that right eye a very real chance of taking place at any time and under any set of circumstances!

The massive cover up of this matter included the release of everyone in the OD involved . . . including missing professor Ronan who was fired from the VA. And then from the University of Michigan from whence he came.

This while the poor student was immediately transferred to Duke University . . . to his great dismay, even though I tried to assure him that Duke was every bit as good a school as Michigan. But that didn't seem to eliminate his anxiety one bit. Although he was reconciled to the need for such a cover up.

(Doc. 1 at 1-2.)

Plaintiff also avers that his lawyer, Arthur C. Miller, was working for the "competition," as evidenced by a letter from Mr. Miller to Arthur LaFave at the Department of Veterans Affairs wherein Mr. Miller stated that he looked "forward to working with you in the future on other Federal Tort Claim actions." (Doc. 1 at 2, 10.) The letter, which is dated January 14, 2009, notified the Department that he would no longer be representing Plaintiff. (Doc. 1 at 10.)

### C. Motion Standards

Defendants bring the instant motion under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Motions to dismiss for lack of jurisdiction are properly brought under Rule

12(b)(1). "Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) fall into two categories: facial and factual attacks." *Ashley v. U.S.*, 37 F. Supp. 2d 1027, 1029 (W.D. Tenn. 1997) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack challenges the sufficiency of the complaint itself." *Id.* "A factual attack, on the other hand, challenges the factual existence of subject matter jurisdiction." *Id.* Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). In the instant case, Defendants' challenge based on the statute of limitations is a facial challenge.

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). In addition, if the allegations in the complaint suffice to establish that an affirmative defense bars the case, it should be dismissed. *Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). "If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]" *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment).

Where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999); nor may courts construct a plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Courts are not to "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to identify a claim not alleged in the complaint, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate

5

seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### D.   Defendants' Motion to Dismiss

Defendants contend that Plaintiff's complaint is untimely because it was not filed within six months of the final denial of his administrative claim. (Doc. 15 at 7-8.) Defendants attached the certified letter which notified Plaintiff that the Department of Veterans Affairs had denied Plaintiff's claim "again," i.e., pursuant to Plaintiff's request for reconsideration. (Doc. 15 at Ex. D.) The certified letter was signed for and received by Plaintiff on December 18, 2009. (*Id.*) In addition, the letter expressly informed Plaintiff that if he was dissatisfied, he "may file suit in accordance with the Federal Tort Claims Act (FTCA) . . . which provides, in effect, that a tort claim that is administratively denied may be presented to a Federal district court for judicial consideration." (*Id.*) Plaintiff filed the complaint on September 23, 2010, approximately nine months after the final denial letter was received.

### E.   Analysis and Conclusion

The FTCA provides that a "tort claim against the United States shall be forever barred . . . unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). The limitation period under the FTCA is strictly construed and neither the potential incompetency of the plaintiff nor any tolling provisions found in state law will extend the limitation period. *Chomic v. United States*, 377 F. 3d 607, 615 (6th Cir. 2004). Applying the six-month limitations period to the instant case, it is clear that Plaintiff's action is barred because the complaint was not filed until nine months after the final agency denial was mailed.

6

Although equitable tolling may be available in some cases, "courts will only do so 'sparingly,' and not when there has only been a 'garden variety claim of excusable neglect.'" *Id.* (citation omitted). I note that Plaintiff has not argued for the application of equitable tolling nor has he alleged any circumstances that would entitle him to equitable tolling.

Finally, to the extent that Plaintiff has raised the issue of his counsel's conflict of interest, the record shows that counsel terminated representation on January 14, 2009, and Plaintiff did not receive the final denial letter until December 18, 2009. (Doc. 1 at 10; Doc. 15 at Ex. D.) I suggest that counsel could not have been at fault in failing to file a cause of action that did not even exist until eleven months after his representation ceased. I further suggest that, even if counsel were still representing Plaintiff and could be blamed for the failure to file a timely claim in this court, equitable tolling would still not apply. *See Hertz v. United States*, 560 F.3d 616, 619 (6th Cir. 2009) (counsel's decision not to file the claim in a timely fashion did not entitle Plaintiff to equitable tolling under FTCA).

### F. Conclusion

Accordingly, I suggest that Defendant's motion to dismiss be granted because Plaintiff failed to timely file the instant action within the six-month period required by the FTCA.[1]

---

[1] Alternatively, I suggest that Plaintiff's complaint also fails to state a claim for medical malpractice. Under the FTCA, the law of the place where the alleged act or omission occurred is to be applied; therefore, Michigan law applies in the instant case. 28 U.S.C. § 1346(b)(1); *Sellars v. United States,* 870 F.2d 1098, 1101 (6th Cir. 1989). Under Michigan law, initiation of a medical malpractice action requires that the plaintiff file a complaint and an affidavit of merit. *Young v. Sellers*, 254 Mich. App. 447, 451, 657 N.W.2d 555 (2002). The affidavit of merit "shall certify that the health professional has reviewed the notice and medical records supplied to him or her . . . and shall contain a statement of each of the following: (a) the applicable standard of practice or care; (b) the health professional's opinion that the applicable standard of practice or care was breached . . .; (c) the actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care; [and] (d) the manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice." Mich. Comp. Laws § 600.2912d(1). "[T]he mere tendering of a complaint without the required affidavit of merit is insufficient to commence [a medical malpractice] lawsuit." *Scarsella v. Pollak*, 461 Mich. 547, 549, 607 N.W.2d 711 (2000) (*Scarsella II*). Since Plaintiff has failed to submit the required affidavit of merit, I suggest that his complaint would fail on the merits as well.

7

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely-filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                              s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                                              CHARLES E. BINDER
Dated: May 23, 2011                                   United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served upon counsel of record via the Court's ECF system, and was mailed by the U.S. Postal Service to the following non-ECF participant: Robert E. Harrington, 13080 West Shore Dr., Apt. #3, Houghton Lake, MI 48629-8654.

Date:  May 23, 2011        By      s/Patricia T. Morris
                                          Law Clerk to Magistrate Judge Binder